UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TERRENCE N. TOWNES,                )
                                   )
            Petitioner             )
                                   )
      v.                           )        1:25-cv-00431-SDN
                                   )
MAINE STATE PRISON,                )
                                   )
            Respondent             )

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Petitioner, pursuant to 28 U.S.C. § 2254, seeks relief from a state court conviction for aggravated assault and violation of conditions of release. (Petition, ECF No. 1.) Petitioner argues his attorneys provided ineffective assistance at trial. The State asks the Court to dismiss the petition. (Response, ECF No. 5.)

After a review of the section 2254 petition, the State's request for dismissal, and the record, I recommend the Court grant the State's request and dismiss the petition.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In October 2016, law enforcement officers were dispatched to a short-term rental residential building in Augusta, Maine, in response to a report of an ongoing assault. A responding officer observed Petitioner walk out of the building while yelling at two women. Petitioner was subsequently arrested. Police interviewed witnesses at the scene and on the following day.

Petitioner was initially charged in a criminal complaint with one count of aggravated assault, two counts of assault, and one count of violating conditions of release. In

December 2016, a grand jury indicted Petitioner on the following charges: (1) elevated aggravated assault by intentionally or knowingly causing serious bodily injury to K.L. with a dangerous weapon in violation of 17-A M.R.S.A. § 208-B(1)(A); (2) aggravated assault by intentionally, knowingly, or recklessly causing serious bodily injury to K.L. that caused serious, permanent disfigurement or loss of substantial impairment of the function of any bodily member or organ in violation of 17-A M.R.S.A. § 208(1)(A-1); (3) aggravated assault by intentionally, knowingly, or recklessly causing serious bodily injury to K.L. with a dangerous weapon after having been convicted of two prior assaults in violation of 17-A M.R.S.A. §§ 208(1)(B) and 1252(4-A); (4) assault on an officer by intentionally, knowingly, or recklessly causing bodily injury to a law enforcement officer after having been convicted of two prior assaults in violation of 17-A M.R.S.A. §§ 752-A(1)(A) and 1252(4-A); (5) assault by intentionally, knowingly, or recklessly causing bodily injury or offensive physical contact to L.F. after having been convicted of two prior assaults in violation of 17-A M.R.S.A. §§ 207(1)(A) and 1252(4-A); and (6) violating conditions of pre-conviction bail in another case by committing new criminal acts in violation of 15 M.R.S.A. § 1092(1)(A).[1]

In March 2017, defense counsel moved for a bill of particulars and for sanctions, arguing that the State had not responded to Petitioner's discovery requests and had not provided enough specificity regarding the alleged injuries underlying several of the

---

[1] At the time of the indictment, Counts 1 and 2 were class A crimes, Count 3 was a class B crime elevated to a class A crime as a result of the prior convictions, Count 4 was a class C crime elevated to a class B crime as a result of the prior convictions, Count 5 was a class D crime elevated to a class C crime as a result of the prior convictions, and Count 6 was a class E crime.

charges.  In May 2017, the trial court granted the motion for sanctions and ordered the State to produce medical records generated by first responders.  Defense counsel withdrew the other motions without prejudice.  In November 2017, less than a month before trial, Petitioner's attorneys filed another motion for sanctions, a motion to dismiss, and another motion for a bill of particulars, arguing in part that the State still had not provided discovery.

On December 5, 2017, the State produced the medical records the Court had ordered the State to produce.  Before trial, the Court denied the motion to dismiss as to counts one and two, and as a sanction for the State's discovery violations, the Court dismissed count three (aggravated assault on the manager) and excluded the testimony and records of the first responders regarding the injuries they treated as the result of the incident.  A jury was selected on December 8, 2017.

On December 14, 2017, five days before the start of the trial, the State notified defense counsel that it just learned that one of its eyewitnesses was legally blind.  The witness informed the State of the vision impairment in preparation for trial.  Petitioner's attorneys moved for sanctions and to dismiss the charges.  The State advised Petitioner that it no longer intended to call the witness to testify.  Defense counsel ultimately agreed that exclusion of the witness would address the defense concerns.  A jury trial was held over three days beginning on December 19, 2017.

At trial, the manager of the rental building (the manager) testified that she responded to a report of a conflict between tenants of the building and observed Petitioner threatening a woman.  The manager intervened and told Petitioner that she had warned him previously

about aggression toward other tenants and that he would need to turn in his keys and vacate the property.  Petitioner initially went back to his room but then came out of the room and glared at the manager aggressively.  The manager told someone to call 911. The manager said that Petitioner then began to punch her in the face.

According to the manager, although she avoided some contact and kicked Petitioner, Petitioner kicked and punched her in the leg, arm, and face while threatening to kill her. The manager stated that Petitioner hit her in the eye with a fire extinguisher.  The manager also testified that she got up after two men held Petitioner against a wall.  One of the men, the owner of the property (the owner), told her to leave because he believed Petitioner was trying to kill her.  The manager testified that while the owner helped her down the hallway, Petitioner struck her multiple times in the back with the fire extinguisher before she arrived at her office.

On cross-examination of the manager, defense counsel identified several omissions and inconsistencies between her trial testimony and her previous statements to police.  For example, the manager conceded that she did not mention to law enforcement that Petitioner struck her in the back with the fire extinguisher as she walked down the hallway. Furthermore, on cross-examination by defense counsel, one of the officers testified that the manager told him after the incident that she had avoided all Petitioner's attempts to hit her except for when Petitioner hit her with the fire extinguisher.

The owner testified that when he entered the hallway, he saw Petitioner standing over the manager hitting her in the head with his fists.  The owner recounted that he grabbed Petitioner, threw Petitioner against the wall, and Petitioner pushed him back, injuring the

owner's shoulder.  The owner testified that Petitioner struck the manager in the back with the fire extinguisher. On cross-examination of the owner, defense counsel identified inconsistencies between the owner's trial testimony and his prior statements to law enforcement on several matters including Petitioner's use of the fire extinguisher, how the owner hurt his shoulder, and whether he had assistance in attempting to restrain Petitioner.

The woman who Petitioner originally threatened testified that she went back to her room after the manager escorted Petitioner to his room.  Subsequently, she left her room and observed Petitioner standing over and punching the manager.  She testified that she went back to her room, called 911, and when she looked out her door, she saw Petitioner hit the manager in the face with the fire extinguisher.  On cross-examination by defense counsel, the witness conceded that she did not include in her written statement to law enforcement that she saw Petitioner hit the manager with the fire extinguisher.

At the close of the evidence, the trial court dismissed count four (assault on a police officer) due to insufficient proof on the element of bodily injury.  Because Petitioner stipulated that he was released on bail at the time of the incident, the jury was not instructed on count six (violation of conditions of release).  The jury found Petitioner guilty on count two (aggravated assault on the manager), not guilty on count five (assault on the owner), and was deadlocked on count one (elevated aggravated assault on the manager).  After a mistrial was declared as to count one, the State dismissed the count.  The state court entered guilty findings on counts two and six.  In January 2018, Petitioner was sentenced to twenty-five years in prison with all but twelve years suspended on count two, and four years of

probation on count two and a concurrent term of six months of probation on count six.  In

May 2019, the Law Court affirmed.  *State v. Townes*, 2019 ME 81 ¶ 1–2, 208 A.3d 774.

Petitioner filed a pro se state court postconviction petition in August 2019.  The

petition was later amended in April 2023, after counsel was appointed.  An evidentiary

hearing was held in February 2024.  After post-hearing briefing, the Superior Court denied

the petition.  Petitioner sought discretionary review; the Law Court denied the petition for

a certificate of probable cause to appeal from the postconviction decision. Petitioner

subsequently filed this federal § 2254 petition.

**DISCUSSION**

**A.    Legal Standards**

A person in custody pursuant to the judgment of a state court may apply to a federal

district court for a writ of habeas corpus "only on the ground that [the petitioner] is in

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  Federal courts will not consider habeas claims on the merits, however, unless

several threshold requirements are satisfied.  For example, a state prisoner must raise all

available claims in a single application rather than in successive petitions, 28 U.S.C. §

2244(b), the federal petition generally must be filed within the federal one-year statute of

limitations, *id.* § 2244(d), and a petitioner ordinarily must exhaust all available state

remedies by "fairly present[ing] [each] claim in each appropriate state court (including a

6

state supreme court with powers of discretionary review)," *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quotation marks omitted).[2]

In addition, a federal court ordinarily may not review a claim that was disposed of in state court "pursuant to an independent and adequate state procedural rule," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedurally defaulted claim can be considered only if: (1) failing to consider it would cause "a fundamental miscarriage of justice" due to new evidence of "actual innocence" showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," *Schlup v. Delo*, 513 U.S. 298, 327 (1995); or (2) "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," *Coleman*, 501 U.S. at 750.

Ineffective assistance of counsel at trial or on appeal can establish cause to set aside a procedural default. *Id.* at 753–54. A petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts evaluate counsel's decisions from their perspective and knowledge at the time and apply a strong presumption that the attorney acted within the wide range of

---

[2] To exhaust a postconviction claim fully in Maine, a petitioner must request discretionary review by the Law Court. *See* 15 M.R.S. § 2131. Because the Law Court's decisions are the final state court adjudications on the merits of each claim, the decisions ordinarily under review in federal district court are the Law Court's orders affirming the decisions of the trial court. However, if the Law Court's decision did not explain the reasons for denying relief, the federal court presumes the Law Court adopted the trial court's reasoning unless the State rebuts the presumption. *See Wilson v. Sellers*, 584 U.S. 122, 125–26 (2018).

reasonable professional assistance. *Rivera v. Thompson*, 879 F.3d 7, 12 (1st Cir. 2018). A "reasonable probability" for purposes of establishing prejudice "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Because the constitutional right to counsel does not extend beyond the direct appeal, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), ineffective assistance in a state postconviction proceeding generally cannot establish cause to set aside a procedural default. *Coleman*, 501 U.S. at 752–55. When a state effectively requires ineffective assistance claims to be raised in a collateral attack rather than a direct appeal, however, the lack of effective assistance during "initial-review collateral proceedings" (but not "other kinds of proceedings") will "establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," provided that the underlying ineffective assistance claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez v. Ryan*, 566 U.S. 1, 14–16 (2012).

When reviewing a habeas claim adjudicated on the merits in state court, a federal court may not grant relief unless (1) the state court decision "was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1); or (2) the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" in state court, *id.* § 2254(d)(2). A state court's legal conclusion is contrary to or an unreasonable application of federal law "only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Nevada v. Jackson,* 569 U.S. 505, 508–09 (2013) (quotation marks omitted).

A federal court's review of a claim adjudicated on the merits in state court is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (interpreting 28 U.S.C. § 2254(d)(1)).

When a federal court considers the merits of a claim that was not adjudicated on the merits in state court (i.e. a procedurally defaulted claim for which the default is excused), a federal court is only permitted to consider evidence beyond the state court record in narrow circumstances. If the petitioner "fail[s] to develop the factual basis of a claim in State court proceedings," the federal court can only consider facts beyond the state court record when the claim is based on a new retroactive rule of constitutional law or newly discovered evidence, and when the further factfinding would demonstrate "by clear and convincing evidence" that "no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2); *see also*, *Shinn v. Ramirez*, 596 U.S. 366, 381–82 (2022).[3]

**B.    Legally Blind Witness**

Petitioner contends that counsel provided ineffective assistance after learning just before trial that one of the potential witnesses was legally blind. (Petition at 7, 10.) According to Petitioner, counsel should have pursued a favorable stipulation, a continuance, or other relief rather than simply agreeing to the exclusion of the witness.

---

[3] The Supreme Court holds petitioners responsible for failing to develop the record—and thus the stringent restrictions on evidentiary hearings apply—when the failure occurred because of a lack of effective assistance of postconviction counsel, even in circumstances addressed in *Martinez v. Ryan*, (i.e. when the failure occurred in an initial-review collateral proceeding and when the claim involves ineffective assistance of trial counsel). *Shinn*, 596 U.S. at 382.

(*Id.*)  The state court noted that both Petitioner's trial attorneys considered the exclusion of the witness to be a favorable result for Petitioner.  (Postconviction Decision at 2–3.)  The state court found that counsel's decision was reasonable particularly because by excluding the witness, counsel prevented the witness from testifying as to what the witness heard during the altercation, which testimony could incriminate Petitioner.  (*Id*. at 3.)

The state court's reasoning is sound.  The record demonstrates that a reasonably competent attorney could have concluded that it was more beneficial to Petitioner to exclude the witness rather than seek a delay that might allow the witness to testify when the matter was rescheduled.  Petitioner asserts that counsel could have used the witness to suggest the possibility that all the witnesses influenced each other's testimony, but counsel was able to make a similar argument to the jury while also excluding the unfavorable testimony.  (*See* December 20, 2017 Trial Transcript at 39 ("Another thing that we know is that there is a common theme between [the three witnesses] . . . and that's that they all in some way or another said that the initial statements that they gave in the immediate day and hours after this incident occurred are in some way not true or that that's not how they remember it today, some 14 months later")).  As the state court noted, the witness was not helpful to Petitioner and if defense counsel had opted for an approach that allowed the witness to testify, the witness would have offered evidence that was harmful to Petitioner.  Counsel's decision to agree to the exclusion of the witness was reasonable.

In sum, the state court's decision was not contrary to or an unreasonable application of *Strickland* or its progeny.

## C.    Written Statements to Police

Petitioner argues that counsel provided ineffective assistance by failing to introduce as evidence at trial written statements that several witnesses gave to police. (Petition at 5.) The state court found defense counsel's cross-examination of the witnesses to be "highly competent" and even "masterful" in one instance. (Postconviction Decision at 4.) Defense counsel effectively presented inconsistencies between the trial testimony of several witnesses and the witnesses' prior written statements without the introduction of the statements in evidence. Introduction of the statements was not necessary for counsel to undermine the witnesses' testimony. Further, introduction of the statements presented the risk that the jury could have found the statements to corroborate other important aspects of the witnesses' testimony.

Because Petitioner has not established that counsel provided deficient performance or that he was prejudiced by counsel's decisions regarding the witnesses' statements, the state court's decision was not contrary to an unreasonable application of *Strickland* or its progeny.[4]

---

[4] In his ground for relief regarding the written statements, Petitioner also mentioned calling eyewitnesses to testify regarding the police statements. Petitioner does not identify the witnesses who might have relevant information on that issue. To the extent that Petitioner intended to raise the failure to call additional witnesses as an independent ground for relief separate from the failure to introduce the written statements into evidence, the State argues correctly that the claim would be procedurally defaulted for failing to raise it in his state court petitions. Furthermore, Petitioner did not establish new evidence of actual innocence or cause to excuse the procedural default.

11

**D.      Pretrial Investigation**

Petitioner alleges that counsel provided ineffective assistance by failing to hire a private investigator and by neglecting to conduct additional pretrial investigation. (Petition at 8.)  Based on counsel's testimony, the state court found that counsel specifically considered hiring an investigator to interview witnesses, but they perceived a risk that the witnesses would coordinate their statements when they learned a private investigator was involved. Counsel therefore decided to use the witnesses' prior statements to impeach them. (Postconviction Decision at 3–4.)  Counsel's decision is reasonable and supportable under the circumstances. Further, Petitioner's suggestion that counsel's pretrial representation and preparation for trial were substandard is not supported by the record.

Because counsel was able to cross-examine the witnesses effectively without hiring an investigator, and because Petitioner has not identified any material information that would have been discovered earlier nor explained how that information would have benefited the defense on the counts on which Petitioner was convicted, the state court's decision was not contrary to or an unreasonable application of *Strickland* or its progeny. *Janosky v. St. Amand*, 594 F.3d 39, 49 (1st Cir. 2010) (quoting *Strickland* and noting that "trial counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary . . . [b]ut this duty does not invariably require a lawyer, at all times and under all circumstances, to probe every evidentiary lead") (quotation marks omitted).

**CONCLUSION**

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**<u>NOTICE</u>**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

<u>/s/ John C. Nivison</u>
U.S. Magistrate Judge

Dated this 9th day of July, 2026.

13